

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

                    Opinion No. 0-2400
                    Re:  The term "textbooks" in Section
                         41, Article 7047, Vernon's An-
                         notated Civil Statutes, is not
                         limited to books officially
                         adopted by the State Board of
                         Education.

        This is in answer to your letter in which you ask
us what is meant by the term "textbooks" in Section 41 of
Article 7047, Vernon's Annotated Revised Civil Statutes of
Texas. Your letter reads in part as follows:

        "Article 7047 Section 41 provides for a tax on
the gross receipts received by textbook publishers.
Prior to September 1, 1929, the textbook law was
known as Article 2069, R.C.S., 1925, but terminated
as of September 1, 1929; later, the Forty-first Legis-
lature reenacted the same law. In October 1928 the
Attorney General, by his Assistant H. Grady Chandler,
held that the gross receipts tax under the said Article
applied only to the sale of such textbooks that were
adopted by the Textbook Commission. After the re-en-
actment of the old law, Mr. Chandler re-affirmed his
opinion of October 4, 1928, on May 16, 1930 and
again on September 5, 1930. On May 6, 1936, the Attor-
ney General, through his Assistant Mr. Hubert T.
Faulk, ruled in the reverse of Mr. Chandler's opin-
ion to the effect that the tax accrued on the receipts

Honorable George H. Sheppard, Page 2

of all textbooks sold or used in the schools whether or not adopted by the Textbook Commission.

"The above opinions have caused several questions to be raised by the textbook publishers as to their tax liability on the receipts received from the sale of books that are not adopted by the Textbook Commission."

The original law placing a tax on the publication of textbooks was passed in 1907 (H. B. No. 4, Sec. 13, 30th Leg., 1st C. S., p. 479, Ch. 28), and amended in 1923 (S. B. No. 291, 38th Leg., p. 352, Ch. 167); but, as indicated by you, that law terminated, that is, became inoperative, by its own terms, on September 1, 1929. However, it is still printed in Vernon's Revised Civil Statutes as Article 7069.

In 1930 this law was re-enacted (H. B. No. 41, 41st Leg., 5th C. S., p. 175, Ch. 37), and is now in effect and codified as Section 41 of Article 7047, Vernon's Annotated Revised Civil Statutes. It reads as follows:

"Textbook publishers. - Each individual, company, corporation or association, whether incorporated under the laws of this State, or of any other State or Nation, engaged in publishing, printing and selling such text-books as are used, or will be used, in the schools of this State, or owning, controlling or managing any such business within the State or out of it, and having State agencies within this State for the purpose of selling any such books, to be used in any of the Schools of this State, shall make quarterly, on the first days of January, April, July and October of each year, a report to the Comptroller, under oath of the individual or of the president or treasurer or superintendent of such company, corporation or association, or of the person owning, controlling or managing such business, showing the gross amount received from such business done within this State from any and all sources during the quarter next preceding. Said individuals, companies, corporations and associations, at the time of making said report, shall pay to the State Treasurer an occupation tax for the quarter beginning on said date equal to

Honorable George H. Sheppard, Page 3

one percent of said gross receipts as shown by said report. The provisions of this Article shall not apply to any corporation organized by the students and faculty of any State supported institution of learning and which has no capital stock and pays no dividends and is organized for the purpose of supplying books and other school supplies to the student of such institution and whose assets on the dissolution of the corporation pass to the governing board of the institution as a trust fund to be used for the benefit of the institution."

The Legislature has not defined the word "text-books" in this statute, and therefore we believe it was intended in the sense it is ordinarily used. In the case of T. & P. Ry. Co. v. Railroad Commission of Texas, 105 Tex. 386, 150 S. W. 878, the Supreme Court of Texas said:

"Words in common use when used by the Legislature in a statute are to be understood as intended to express the sense in which they are ordinarily used. Lewis, Const. Stat. vol. 2, p. 654, § 358."

The word "textbook" has a well defined meaning. It is defined in Webster's New International Dictionary, 2nd Ed. Unabridged, as follows:

"Originally, a book on which a teacher lectures or comments; hence, any manual of instruction; a book containing a presentation of the principles of a subject, intended to be studied by the pupil and used as a basis of instruction by the teacher."

The only appellate court case we have found that deals with the meaning of the word "textbooks" is the case of School District of Ferndale v. School District of Conemaugh Township, 326 Pa. 141, 191 A. 611, which goes farther than we are going in this opinion and holds that "textbooks" include all "books which must be studied to complete text-book work."

An examination of the Free Textbook Law (Chapter 16, Title 49, V. A. C. S.) shows that there can be textbooks used in the public schools in addition to those adopted by the State. There was formerly a Textbook Commission, but its duties

Honorable George H. Sheppard, Page 4

have been taken over by the State Board of Education (Art. 2675b and Art. 2839, V. A. C. S.). Under Article 2843 it has "authority to select and adopt a uniform system of textbooks to be used in the public free schools of Texas"; but Articles 2860 and 2862 show that "textbooks" other than those adopted by the State Board of Education may be used. Article 2860 reads in part as follows:

> ". . . provided further that nothing in this Act shall be construed to prevent or prohibit the trustees of school districts from purchasing textbooks with the local maintenance funds and furnishing free textbooks to the students in the event that no contracts are made by the State."

Article 2862 reads in part as follows:

> "When the supplementary books other than those selected by the Textbook Commission are used, they shall be furnished at a price fixed by the trustees of the school in which they are used and approved by the State Superintendent of Public Instruction, . . ."

We believe that the Legislature intended for all books used as "textbooks" in the public schools to be included in the statute in question, and in view of the fact books other than those adopted by the State Board of Education might be used in some instances we do not believe that it was intended by the Legislature that the term "textbooks" as used in the statute includes only such books as are adopted by the Board.

We have studied the opinions by former Assistant Attorney General H. Grady Chandler and former Assistant Attorney General Hubert Faulk, to which you refer. Those opinions do not make the extreme holdings that you suggest. Mr. Chandler's opinion holds that "books that are a part of the miscellaneous works of the school library" such as "The Story of Daniel Boone", "The Story of Cinderella" and "The Story of the Stars" are not textbooks within the meaning of the statute; and Mr. Faulk's opinion holds that music books from which music is taught in the public schools but which are not adopted by the Board are textbooks under the meaning of the statute.

Our conclusion is that as the term "textbooks" is not defined in the statute it includes those books that are considered textbooks in the sense in which the word is ordin-

Honorable George H. Sheppard, Page 5

arily used, and it is not limited to those books that are adopted by the State Board of Education. That would include any manual of instruction or book containing a presentation of the principles of a subject intended to be studied by the pupil and used as a basis of instruction by the teacher; but it would not include miscellaneous works in the library that are not used as a basis of instruction.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Cecil C. Rotsch
Assistant

CCR:BBB

APPROVED JUL 8, 1940

f.ng ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY